**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAYLA QUARLES, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 20-cv-7179 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Manish S. Shah |
| | ) | Presiding Judge |
| PRET A MANGER (USA) LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM**

122234

TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    RELEVANT BACKGROUND ........................................................................... 2

    A.    The Biometric Information Privacy Act. ............................................... 2

    B.    Plaintiff's allegations. ........................................................................... 3

    C.    Procedural History. ............................................................................... 3

    D.    The proposed Settlement........................................................................ 5

          1.    The Settlement Class............................................................... 5

          2.    Monetary relief for Settlement Class Members. ..................... 5

          3.    *Cy pres* distributions. ............................................................ 6

          4.    Settlement Class release........................................................... 6

          5.    Class Representative Service Award. ...................................... 7

          6.    Attorneys' fees and costs. ........................................................ 7

          7.    Administration and Notice. ...................................................... 8

II.    ARGUMENT ...................................................................................................... 9

    A.    The settlement approval process. .......................................................... 9

    B.    The Settlement warrants preliminary approval.................................... 11

          1.    The Class has been adequately represented. ........................... 11

          2.    The Settlement resulted from arm's length negotiations. ....... 12

          3.    The proposed Settlement treats Settlement Class Members equally. ...... 14

          4.    The relief provided to the Settlement Class is more than adequate......... 14

               a.    The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval. ................................................... 16

               b.    The proposed method of distribution is effective. ........... 18

               c.    The proposed attorney fee award and timing of payment support preliminary approval. .......................... 20

    C.    The Settlement Class should be certified............................................. 21

          1.    The Settlement Class is sufficiently numerous. ..................... 22

          2.    Plaintiff's claims are typical. ................................................. 22

          3.    Plaintiff and Counsel are adequate. ....................................... 23

          4.    Commonality is satisfied......................................................... 23

          5.    Common questions predominate.............................................. 24

i

6.  A class action is the superior means of resolving this dispute. ................ 25

7.  The Settlement Class is ascertainable. .................................................... 27

D.  The proposed Notice plan is constitutionally sound. ........................................ 27

IV.  CONCLUSION ................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
  (N.D. Ill. May 5, 2011) ................................................................................ 18

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 21, 26

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400
  (N.D. Ill. Mar. 2, 2017) ................................................................................ 13

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) .......................................................................... 9

*Barnes v. Air Line Pilots Ass'n,*
  310 F.R.D. 551 (N.D. Ill. 2015) .................................................................... 26

*Beaton v. SpeedyPC Software*,
  907 F.3d 1018 (7th Cir. 2018) ...................................................................... 22

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) .................................................................... 7, 20

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
  No. 1:18-cv-07018
  (N.D. Ill. Sept. 10, 2020) .............................................................................. 20

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) .......................................................................... 9

*Fournigault v. Independence One Mortgage Corp.*,
  234 F.R.D. 641(N.D. Ill. 2006) ..................................................................... 11

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093
  (N.D. Ill. Oct. 10, 1995) ............................................................................ 9, 18

*Golon v. Ohio Savs. Bank*,
  No. 98-cv-7430, 1999 WL 965593
  (N.D. Ill. Oct. 15, 1999) ................................................................................ 24

iii

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368
(S.D. Ill. Dec. 13, 2018) ........................................................................... 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ................................................................ 14

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ......................................................... 24, 25

*In re Google Buzz Privacy Litig.*,
No. C 10-00672 JW, 2011 WL 7460099
(N.D. Cal. June 2, 2011) ........................................................................... 15

*In re Google LLC Street View Electronic Communications Litigation*,
No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928
(N.D. Cal. Mar. 18, 2020) ......................................................................... 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ 10

*In re Southwest Airlines Voucher Litig.*,
No. 11-cv-8176, 2013 WL 4510197
(N.D. Ill. Aug. 26, 2013) ........................................................................... 17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...................................................................... 9

*Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*,
No. 2019-CH-01813
(Cir. Ct. Cook Cty. Oct. 18, 2019) ............................................................ 15

*Jones v. CBC Rest. Corp.*,
No. 1:19-cv-06736
(N.D. Ill. Oct. 22, 2020) ............................................................................ 15

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255
(N.D. Ill. Feb. 19, 2014) ............................................................................ 25

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ..................................................................... 15

*Langendorf v. Skinnygirl Cocktails, LLC*,
306 F.R.D. 574 (N.D. Ill. 2014) ................................................................ 23

iv

*Lawrence v. First Fin. Inv. Fund V, LLC*,
  No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184
  (D. Utah Aug. 26, 2021) ...................................................................................... 19

*Martin v. JTH Tax, Inc.*,
  No. 13-6923 (N.D. Ill. Sept. 16, 2015) ............................................................... 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................ 27

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................................................ 21, 27

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................ 14

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
  231 F.R.D. 280 (N.D. Ill. 2005) ......................................................................... 22

*Parker v. Time Warner Entm't Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ................................................................ 15

*Phillips Randolph Enters., LLC v. Rice Fields*,
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
  (N.D. Ill. Jan. 11, 2007) ..................................................................................... 18

*Phillips v. Waukegan Hous. Auth.*,
  331 F.R.D. 341 N.D. Ill. 2019). .......................................................................... 22

*Rohlfing v. Manor Care*,
  172 F.R.D. 330 (N.D. Ill. 1997) ......................................................................... 26

*Rysewyk v. Sears Holdings Corp.*,
  Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004
  (N.D. Ill. Jan. 29, 2019) ..................................................................................... 11

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................. 18

*Schulte v. Fifth Third Bank*,
  No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810
  (N.D. Ill. Sept. 10, 2010) ................................................................................... 13

*Sekura v. L.A. Tan Enters., Inc.*,
  2015-CH-16694 (Cir. Ct. Cook Cnty.). .............................................................. 20

v

*Smith v. Dearborn County*,
  244 F.R.D. 512 (S.D. Ind. 2007)......................................................................... 22

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926
  (N.D. Ill. May 14, 2019) ..................................................................................... 13

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) .............................................................................. 22

*Svagdis v. Alro Steel Corp.*,
  2017-CH-12566 (Cir. Ct. Cook Cnty.) ............................................................... 20

*Swanson v. American Consumer Industries, Inc.*,
  415 F.2d 1326 (7th Cir. 1969) ............................................................................ 22

*Taylor v. Shutterfly, Inc.*,
  No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069
  (N.D. Cal. Dec. 7, 2021) ..................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................................ 23

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) .............................................................................. 11

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
  2018-CH-02140 (Cir. Ct. Cook Cnty.) ............................................................... 20

*Zhirovetskiy v. Zayo Group, LLC*,
  17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) ................................................ 15

**Statutes**

740 ILCS 14/1, *et seq.*............................................................................................ passim

**Other Authorities**

Black's Law Dictionary (10th ed. 2014).................................................................. 13

Illinois House Transcript, 2008 Reg. Sess. No. 276 (May 30, 2008) ...........................2

**Rules**

Fed. R. Civ. P. 23.................................................................................................... passim

**Treatises**

4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2011) ............................................................... 19

4 NEWBERG ON CLASS ACTIONS §§ 11.25 and 11.41 (4th ed. 2002) ....................................... 9, 10

*Manual for Complex Litig.* §§ 13.14, 21.312, 21.632, and 21.633 (4th ed. 2004) ................ 10, 27

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Kayla Quarles respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant Pret a Manger (USA) Limited ("Pret" or "Defendant") (collectively, the "Parties")

Ms. Quarles alleges Pret violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting its employees' fingerprints without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.

After engaging in substantive motion practice and exchanging written discovery, the Parties participated in an eight-hour mediation session overseen by the Honorable Judge Morton Denlow (ret.). These efforts culminated in a class-wide Settlement which provides outstanding relief for a Settlement Class of approximately 797 former Pret employees.[1] If approved, Pret is required to pay $677,450.00 into a non-reversionary Settlement Fund from which approximately 797 Settlement Class Member will receive an equal, *pro-rata* distribution without the need to file a claim or take any other action. Plaintiff estimates[2] that every class member would receive $518 without the need for a claim form.

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, places the Settlement squarely within the range of possible approval, whereas the proposed Settlement Class easily satisfies Rule 23's requirements

---

[1] During the pandemic, Pret closed every location it owned and operated in the State of Illinois.

[2] Plaintiff's estimate is based on a pro-rata distribution after deduction of $10,000 administration costs, $9,173 in reimbursed expenses, $5,000 for incentive award, and $240,282 for fees. As explained below, Plaintiff will separately file a fee petition and there is no clear sailing agreement for fees or incentive award.

1

for conditional certification. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Plaintiff's attorneys as Class Counsel, approve the proposed form and method of Class Notice, and set a Final Approval Hearing.

## II.     RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally-identifiable information, biometric information such as fingerprints cannot be changed (much less replaced) when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in 2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g). The statute features several safeguards that protect Illinois' citizens' ability to maintain control over their biometric information.

One such safeguard is Section 15(b)'s informed consent regime. As relevant to this case, this provision prohibits an employer from collecting its employee's biometric information without first: (1) providing the employee with a written disclosure explaining that biometric information is being collected, the reason for the collection, and the length of time for which the biometric information will be retained; and (2) obtaining a signed written release from the employee authorizing the collection. 740 ILCS 14/15(b).

Section 15(a) of BIPA, in turn, requires an employer who possess biometric information to destroy that data once the purpose for which it was collected has been satisfied. *See* 740 ILCS 14/15(a).

2

### B. Plaintiff's allegations.

Pret is an international sandwich chain that owns and operates locations throughout the country, thirteen of which were previously situated in the Chicago area. Plaintiff worked at one such location from April 2018 to January 2019. Compl. at ¶¶ 27-29.

As alleged in the Complaint, Pret required Plaintiff (like all other new employees) to use a biometric timekeeping system that verified her identity through a fingerprint scan. *Id.* at ¶¶ 8-9, 24, 28-31. Plaintiff alleges Pret required new hires such as herself to scan their fingerprints to enroll in Pret's employee fingerprint database, and to subsequently use their fingerprints in order to clock in and out of work. *Id.* at ¶¶ 24, 28-31.

According to Plaintiff, Pret's implementation of this biometric timekeeping system directly violated BIPA in two discrete ways. First, Plaintiff alleges Pret violated Section 15(a) of the statute by failing to implement and adhered to a publicly-available policy governing the retention and destruction of its employees' biometric data. *See id.* at ¶¶ 26, 36-37, 44-52. Second, Plaintiff alleges Pret violated Section 15(b) by collecting, storing, and using its employees' biometric data without first providing the necessary disclosures or receiving informed written consent. *Id.* at ¶¶ 24-25, 32-35, 53-62.

### C. Procedural History.

On November 4, 2020, Plaintiff filed this class action in the Circuit Court of Cook County. Pret removed the case to this Court on December 4, 2020, *see* ECF No. 1, where it remains pending.

On January 11, 2020, Pret moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc. See* ECF No. 9. The Court denied this Motion on December 14, 2020, and directed Pret to respond to the Complaint. *See* ECF No. 10.

On January 6, 2021, Pret filed a motion to dismiss under Rule 12(b)(6), contending that Plaintiff's claims were subject to—and thus barred by—the one-year statute of limitations set forth in 735 ILCS 5/13-201. *See, generally,* ECF No. 13. On January 26, 2021, Plaintiff filed her Response in Opposition to the Motion to Dismiss. *See* ECF No. 14.

Pret subsequently retained new counsel, and shortly thereafter filed a renewed motion to stay, as well as a motion for leave to file an Amended Motion to Dismiss ("Amended Motion"). *See* ECF Nos. 15-22. On February 3, 2021, the Court granted Pret's motion for leave to file the Amended Motion, denied the pending motion to dismiss as moot, and entered and continued Pret's renewed Motion to Stay. ECF No. 21.

On February 3, 2021, Pret filed its Amended Motion, which asserted myriad substantive grounds for dismissal. *See, generally,* ECF No. 22. After receiving full briefing on the issues, the Court denied the Amended Motion on April 26, 2021, and directed Pret to respond to the Complaint. *See* ECF No. 27. On May 25, 2021, Pret filed its Answer and Affirmative Defenses to Plaintiff's Complaint. Shortly thereafter, the Parties commenced written discovery in the form of interrogatories and document requests.

The Parties subsequently agreed to mediate this dispute on August 23, 2021 before the Honorable Morton Denlow (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases.[3] At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[4] With the assistance of Judge Denlow—and eight-hours of arm's-length negotiations—the Parties reached an agreement-

---

[3] *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as Exhibit B, ¶ 4.
[4] *Id.* at ¶ 5.

4

in-principle on the material terms of a class-wide settlement.

Following the mediation, the Parties continued extensive negotiations over several months on their remaining points of dispute, which ultimately culminated in the fully executed Agreement for which the Parties now seek preliminary approval, a copy of which is attached hereto as Exhibit A.

### D. The proposed Settlement.

The Settlement's details are contained in the Agreement signed by the Parties. *See* Ex. A. For purposes of preliminary approval, the following summarizes the Agreement's terms:

#### 1. The Settlement Class.

The Settlement Class is defined as follows:

> All individuals employed by Defendant Pret a Manger (USA) Limited and any other related entities in the State of Illinois who logged onto, interfaced with, or used any software, systems, or devices that used the individual's finger, hand, or any biometric identifier of any type ("Biometric Systems") in Illinois, including any employee of the above entities who has a claim under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.,* from November 4, 2015 through the date of preliminary approval.

Ex. A at §§ II.29; V.1.[5] Based on the information obtained in discovery, the Settlement Class consists of 797 individuals. *See* Ex. B (Keogh Decl.), ¶ 8.

#### 2. Monetary relief for Settlement Class Members.

The Settlement requires Defendants to create a non-reversionary Settlement Fund of $677,450.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive

---

[5] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement. *Id*.

award approved by the Court. *See* Ex. A (Agreement) at §§ II.35, V.5, X.2-3. No amount of the Settlement Fund will revert to Defendants, and Settlement Class Members are not required to submit a claim or take any action to receive compensation. Instead, the class administrator ("Administrator") will automatically issue checks to the last known address of each Settlement Class Member who declines to opt out. *Id.* at §§ II.5, X.2**.** Checks issued to Settlement Class Members shall remain valid for 90 days from the date of their issuance. *Id.* at § X.2. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least five dollars ($5.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* at § X.3.

### 3. *Cy pres* distributions.

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, the Plaintiff suggests any such funds be sent to the Electronic Privacy Information Center as that organization is closely related to the privacy issues of this BIPA class. Ex. A (Agreement) at §X.3. The class notice will identify this organization.

### 4. Settlement Class release.

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims that "relate in any way to information that is or could be protected under [BIPA] or any other similar state, local, or federal law, regulation, or ordinance, or common law, regarding the use, collection, capture, receipt, maintenance, storage, transmission, or disclosure of

6

biometric identifiers that Settlement Class Members claim, might claim, or could have claimed in any court or administrative proceeding." Ex. A (Agreement) at § XI.1.

### 5. Class Representative Service Award.

The Agreement provides that Plaintiff may petition the Court for a Service Award. Ex. A (Agreement) at § V.4. There is no clear sailing provision as to this request. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id*. Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff will request a Service Award of $5,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6. Attorneys' fees and costs.

Prior to the Final Approval hearing and prior to the objection deadline, Class Counsel will apply to the Court for an award of attorneys' fees and costs. Ex. A (Agreement) at §§ V.3, VI.2.B. As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 36% plus reasonable expenses in common fund class settlements after settlement administration costs are deducted. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees

or costs. Ex. A at § V.3  Further, the Class Notice will inform the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs. As with the incentive award to the class, the Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 7. Administration and Notice.

All costs of notice and claims administration shall not exceed $10,000 and be advanced by Defendants, credited against the Settlement Fund. The Administrator will be American Legal Claim Services, LLC ("ALCS") subject to this Court's approval. Ex. A (Agreement) at § II.6. The Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice; (2) setting up and maintaining the settlement website and toll-free number; and (3) issuing settlement payments. *Id.* at §§ VI, X.

Within fourteen (14) days of the entry of Preliminary Approval Order, the Administrator will issue the Class Notice (Exhibit 3 to the Agreement) via direct mail to all Settlement Class Members. *Id*. at §§ II.17, VI.2.A. Before doing so, the Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. *Id.* For Settlement Class Members whose Notice is returned as undeliverable, the Administrator will conduct a database search and re-issue the Mail Notice to all Settlement Class Members for whom an alternative address can be found. *Id.*

Further, the Administrator will establish and maintain a Settlement Website. *Id.* at § VI.2.B. The Settlement Website will include general information such as the Agreement, Website Notice, the Preliminary Approval Order, the operative Complaint, the attorney fee motion and any other materials the Parties agree to include. *Id*.

8

## II.    ARGUMENT

### A.  The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion" There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995) .

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public

and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 NEWBERG § 11.25. With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.

Rule 23 was amended effective December 1, 2018. Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i—ii) (emphasis in original). Both requirements are satisfied here.

**B. The Settlement warrants preliminary approval.**

When deciding whether to grant preliminary approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Rysewyk v. Sears Holdings Corp.*, Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019) (Shah, J.).[6] Each of these factors support preliminary approval.

### 1. The Class has been adequately represented.

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first two prongs of the adequacy analysis are satisfied here. To begin, Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class she seeks to represent. Plaintiff and the other Settlement Class Members are all former Pret employees who share identical claims arising from a common course of conduct: Pret's allegedly unlawful

---

[6] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

collection and retention of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, assisting her attorneys in investigating the Settlement Class's BIPA claims, reviewing and approving the Class Action Complaint prior to filing, regularly conferring with her attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See* Ex. B (Keogh Decl.) at ¶ 17.

The third prong of the adequacy analysis is also satisfied because proposed Class Counsel have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA, and have been found adequate and appointed class counsel in scores of cases arising under various other consumer protection statutes. *See id.* at ¶¶ 18-48. Drawing on this experience, proposed Class Counsel were able to extensively evaluate the merits of this case, Pret's defenses, the benefits of the proposed Settlement, and the attendant risks of litigation.

Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, briefing and defeating two motions to dismiss, taking discovery into merits and class issues, and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *See id.* at ¶ 4. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy of representation prong met.

### 2. The Settlement resulted from arm's length negotiations.

The second 23(e)(2) factor focuses on whether the Settlement is the product of an "arm's length transaction, which Black's Law Dictionary defines as:

> 1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.

Black's Law Dictionary (10th ed.2014).

The Settlement falls squarely within this definition. As detailed above, the Settlement is the result of extensive, arm's length negotiations between attorneys experienced in the litigation, certification, trial, and settlement of consumer privacy class actions, carried out during an eight-hour mediation session held before Judge Denlow. *See* Ex. B (Keogh Decl.) at ¶¶ 4-5. And, after reaching an agreement on the material points of the Settlement with the assistance of Judge Denlow, the Parties spent the next five months negotiating the finer details of the Agreement before executing it on January 12, 2022. *Id.* at ¶ 5.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The Settlement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3. The proposed Settlement treats Settlement Class Members equally.

The next Rule 23(e)(2) consideration supports approval where the proposed settlement treats all class members the same. Here, each Settlement Class Member has identical BIPA claims against Pret, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). No Settlement Class Member is treated differently, and each can object or opt out in the same fashion. Because there is no disparate treatment between members, the Settlement merits approval.

### 4. The relief provided to the Settlement Class is more than adequate.

The most critical Rule 23(e)(2) factor analyzes whether the relief provided for the class is adequate. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, Defendant has agreed to create a $677,000 Settlement Fund for a class of 797 employees. *See* Ex. A  (Agreement) at § II.35**.** The Settlement Fund is non-reversionary, and each Settlement Payment will be automatically issued to the last known address of each Settlement Class Member. Thus, the Settlement represents a significant and immediate value for those Class Members—a gross amount of $849.43 apiece. As noted above, Plaintiff estimates that every single class member will receive $518 after reductions for Administrative Expenses, attorney's fees, and the incentive award.

14

This class relief is in line with, if not superior to, other BIPA settlements that have received court approval. *See, e.g., Jones v. CBC Rest. Corp.,* 1:19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (gross recovery of $800 per class member); *Zhirovetskiy v. Zayo Group, LLC,* 17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (gross recovery of $450 per class member); *Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*, No. 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) (gross recovery of $894.98 per class member). It should be noted that the amount recovered is more significant since Pret has closed every Illinois location and its financial position is much worse off from when this case was initially filed.

Outside the realm of BIPA, the cash payments afforded by the Settlement Agreement dwarf the recoveries typically seen in privacy class actions, which often provide class members with little (if any) monetary relief. *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (upholding settlement providing only $9.5 million in *cy pres* relief despite that statutory claims at issue provided for significant statutory damages); *In re Google LLC Street View Electronic Communications Litigation*, No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* distribution of $13 million fund in case with 60 million person class (equating to $0.22 per person before fees, expenses, or administration costs) in Electronic Communications Privacy Act (ECPA) matter with $10,000 available statutory damages); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving settlement consisting solely of $8.5 million *cy pres* payment where statutory claims at issue provided for statutory damages of up to $10,000 per claim). *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 261-62 (E.D.N.Y. 2009) ("When the benefit is . . . placed in the context of the risks and delay of continued litigation[,]" a settlement providing $6.75 per

15

class member was "clearly within the range of reasonableness" for claims brought under the Cable Communications Policy Act of 1984 which provides for minimum statutory damages of $1,000).

In sum, the relief provided by the proposed Settlement is more than adequate when compared against comparable results.

Finally, as shown below, the adequacy of the class relief is further illustrated by the sub-factors set forth in Rule 23(e)(2).

### a. The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals, as well as the risk that goes with it.

While Plaintiff remains confident in the strength of her claims, Pret denied all of her material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Settlement Class. Pret's primary defense is that it faces no liability under BIPA because the information captured by its timekeeping system's fingertip scanner does not fall within the statutory definition of "biometric identifiers" or "biometric information," but instead falls within a third category outside of BIPA's purview. *See* ECF No. 31 at 22. Defeating this highly-technical defense at would entail costly expert and third-party discovery. While Plaintiff is confident she would prevail on this issue, the lack of any guiding precedent offers no guarantee of success at summary judgment or trial.

16

In addition, Pret intended to avoid liability by proving, among other issues, that: (1) Pret's reliance on a good-faith interpretation of BIPA precludes a finding of negligence or recklessness; (2) Plaintiff and the Settlement Class's claims are barred on the doctrines of waiver, estoppel, ratification, or acquiescence; and (3) Plaintiff and the Settlement Class assumed the risk of any injuries resulting from Pret's alleged statutory violations. *See* ECF No. 31 at 20-22. A victory on these defenses could doom the case in its entirety or, at the very least, greatly reduce the size of the proposed class and preclude any recovery for scores of class members who stand to benefit from the Settlement. The risks posed by continued litigation is readily apparent given the number of other legal and factual issues that have gone untested to date without controlling legal authority. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

And, before resolving Pret's substantive defenses, Plaintiff would first need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, her success is certainly not guaranteed.

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Pret intended to seek reduction of damages based on the argument an award of $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution. *See* ECF No. 31 at 24. This, too, presents a significant risk to the Settlement Class, as some courts view awards of aggregate, statutory damages with skepticism and reduce such

awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *14-15 ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of preliminary approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes the whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and

expedient a manner as possible" while ensuring "only legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Unsurprisingly, courts routinely find this factor satisfied where class members do not need to take any affirmative steps to receive their portion of the settlement fund. *See, e.g., Taylor v. Shutterfly, Inc.,* No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *20 (N.D. Cal. Dec. 7, 2021) (finding distribution method reasonable where "[a]ll Class Members automatically receive benefits under the Settlement, without the need to file a Claim.")*; Lawrence v. First Fin. Inv. Fund V, LLC,* No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184, at *14-15 (D. Utah Aug. 26, 2021) ("Here, the method of distributing relief to the class is sufficiently effective and no claims process is required. Because the class members can be individually identified from First Financial's records, no action is required of any class member to receive the benefits of the Settlement.").

The same result is warranted here. Settlement Class Members do not need to submit a claim form or take any action to obtain their share of class award. Instead, the Administrator will simply distribute each *pro rata* share of the Settlement Fund to the last known address of each Settlement Class Member, which can easily be obtained from Pret's books and records. This proposed method of distribution is clearly effective and weighs in favor of preliminary approval.

### c. The proposed attorney fee award and timing of payment support preliminary approval.

The final relevant sub-factor[7] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee, nor does it provide that Pret has agreed to any set fee amount. Instead, Class Counsel anticipates asking the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount Illinois courts and others within the Seventh Circuit routinely award. *See, e.g., Lopez-McNear*, No.19-cv-2390, ECF No. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, ECF No. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.) (36% of the fund net admin costs); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million); *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

---

[7] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* Ex. B (Keogh Decl.) at ¶ 10, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

Regarding timing, Class Counsel will file their application on the date of the Notice Deadline allowing Class Members to review or object, the Court will rule on the application and actual funding will occur at the same time as funding of the Settlement Fund. Thus, the provisions regarding fees are fair, reasonable and support approval.

Considering all these factors, the relief provided to the class is more than adequate and merits approval.

For the foregoing reasons, the Parties' Settlement Agreement is fair, reasonable, and adequate, and merits approval.

**C.     The Settlement Class should be certified.**

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

To that end, Plaintiff must demonstrate the Settlement Class satisfies the criteria imposed by Rule 23(a), which requires that: (i) the proposed class be so numerous that joinder of individual class members is impracticable; (ii) there be questions of law and fact common to the class; (iii) the proposed class representative's claims be typical of the class claims; and (iv) the named class representative and counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a); *see Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). And, because the Settlement provides for monetary relief, the Settlement Class must also satisfy Rule 23(b)(3)'s requirements that: (i) common questions of law or fact predominate over individual issues; and (ii) the class action device is superior to other means of resolving the claims. Fed. R. Civ. P. 23(b)(2). Finally, a Rule 23(b)(3) class must also be "ascertainable"—*i.e.* defined by objective criteria. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 659 (7th Cir. 2015).

As explained below, the Settlement Class satisfies all of these prerequisites and should therefore be certified for settlement purposes.

### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. A class of as few as 40 is sufficient. *Smith v. Dearborn County*, 244 F.R.D. 512, 517 (S.D. Ind. 2007) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, fn.9 (7th Cir. 1969)). Here, the Settlement Class consists of 797 members, which easily satisfies numerosity.

### 2. Plaintiff's claims are typical.

A putative class representative also must demonstrate that his claims are typical of the claims of the class she seeks to represent. Fed. R. Civ. P. 23(a)(3). This prong of the Rule 23 analysis simply requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). The critical issue is whether the plaintiff's claim "arise[es] from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018); *accord, Phillips v. Waukegan Hous. Auth.,* 331 F.R.D. 341, 352 (N.D. Ill. 2019).

Here, there is no daylight between Plaintiff's claims and those of the Settlement Class. Instead, those claims all flow directly from Pret's alleged failure to: (1) inform Plaintiff and the Settlement Class, in writing, about the collection of their biometric data, along with the purpose

and length of term for the collection; (2) obtain Plaintiff's and the Settlement Class's informed written consent prior to colleting their biometric data; (3) implement a publicly-available policy governing the retention and destruction of biometric data; and (4) permanently destroy Plaintiff's and the Settlement Class's biometric data at the earliest practicable time (*i.e.* upon termination of their employment). Compl. at ¶¶ 24-26, 32-37**.** Hence, the outcome of Plaintiff's and the Settlement Class's claims depend entirely on *Pret*'s biometric collection and destruction practices—*i.e.* a common course of conduct. Consequently, Plaintiff is typical of the Settlement Class.

### 3. Plaintiff and Counsel are adequate.

Adequacy means Plaintiff and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As demonstrated above, both Plaintiff and proposed Class Counsel fully satisfy this requirement. *See* Section III.B.1, *supra*.

### 4. Commonality is satisfied.

Commonality requires that "there are questions of law or fact common to the class" and that "the class members have suffered the same injury." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The class claims must "depend upon a common contention … capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. A single common question is sufficient to satisfy Rule 23(a)(2). *Langendorf v. Skinnygirl Cocktails, LLC,* 306 F.R.D. 574, 589 (N.D. Ill. 2014) (collecting cases).

Commonality is satisfied here. Plaintiff's and the Settlement Class's BIPA claims are based on the same contention and allegedly unlawful course of conduct: That Pret violated Sections 15(a) and 15(b) of BIPA by collecting, storing, and using the Settlement Class's biometric data without

23

obtaining informed written consent or implementing and adhering to a publicly-available biometric retention and destruction policy. This contention depends entirely on common questions that can be resolved on a class-wide basis "in one stroke," such as: (1) whether the fingerprint data collected by Pret's timekeeping system qualify as biometric identifiers or biometric information under BIPA, *see* 740 ILCS 14/10; (2) whether Pret provided sufficient written disclosures regarding the collection of Plaintiff's and the Settlement Class's biometric data, along with the purpose and length of term for the collection, *see* 740 ILCS 14/15(b); (3) whether Pret obtained signed releases from Plaintiff and the Settlement Class authorizing the collection, use, and storage of their biometric data, *id.*; (4) whether Pret implemented and adhered to a publicly-available policy governing the retention and destruction of biometric data, *see* 740 ILCS 14/15(a); and (5) whether Pret's alleged BIPA violations were negligent or reckless, *see* 740 ILCS 14/20. These questions are more than sufficient to demonstrate commonality. *See, e.g., In re Facebook Biometric Info. Privacy Litig*., 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no doubt that a template-based [BIPA] class poses common legal and factual questions….").

### 5. Common questions predominate.

Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815. Put another way, the critical issue is whether "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999).

24

That is the case here. Plaintiff's and the Settlement Class's claims for violation of Section 15(a) and (b) hinge entirely on the common questions identified above, all of which can be resolved through class-wide evidence maintained by Pret. The common questions posed by the Section 15(b) claim, for instance, can be easily resolved by reviewing the uniform disclosures and releases Pret provided to its employees (if any), along with evidence regarding the type of data captured by its timekeeping system. As to the Section 15(a) claim, the question of whether Pret destroyed the Settlement Class's biometric data once it was no longer necessary—*i.e.* when their employment ended—is a straightforward factual issue that turns on Pret's data destruction policies (or lack thereof).

In sum, the BIPA violations at issue can, for provisional certification purposes, be determined on a class-wide basis in a single adjudication without consideration of any individualized issues. *See, e.g., In re Facebook*, 326 F.R.D. at 545-48 (predominance satisfied where liability turned on class-wide issues—whether defendant's facial recognition software captured biometric identifiers, and, if so, whether defendant's uniform disclosures complied with Section 15(b)'s informed consent regime); *see also Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255, at *33 (N.D. Ill. Feb. 19, 2014) ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). As such, predominance is satisfied.

### 6. A class action is the superior means of resolving this dispute.

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule provides four criteria that govern superiority analysis, all of which weigh in favor of certification.

First, the "extent and nature" of any parallel litigations does not defeat superiority, as there

is no indication any Class Member filed their own BIPA suit against Pret. *See* Fed. R. Civ. P. 23(b)(3)(B) (one superiority factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members"). Second, it is desirable to concentrate the litigation, including the settlement approval process, in this forum because the events underlying the Settlement Class's claims arose in this district. *See* Fed. R. Civ. P. 23(b)(3)(C); *see also Barnes v. Air Line Pilots Ass'n,* 310 F.R.D. 551, 562 (N.D. Ill. 2015). Third, it is highly unlikely any class members have an interest in individually controlling this action, *see* Fed. R. Civ. P 23(b)(3)(A), "as no [putative Class members] have brought individual suits." *Barnes,* 310 F.3d at 562. That is hardly surprising, given that BIPA provides for the recovery of liquidated damages of $1,000 or $5,000 depending on the defendant's level of culpability. *See* 740 ILS 14/20(1)-(2). Any individual recovery would likely be dwarfed (if not swallowed whole) by litigation costs, like the need for costly expert and/or third-party discovery on the technical functionality of the timekeeping system at issue and the related biometric information.

Finally, the fourth factor—"the likely difficulty in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—is a non-issue where, as here, certification is sought solely for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Nevertheless, manageability is not a problem here. There are no individual issues that could present any overwhelming practical or administrative issues at trial, and the notice process will be trivially easy in this case given that Pret possesses the names and last known addresses for each member of the Settlement Class. *See Rohlfing v. Manor Care,* 172 F.R.D. 330, 343 (N.D. Ill. 1997); *Barnes*, 310 F.R.D. at 562.

As such, all four factors set forth in Rule 23(b)(3) support a finding of superiority.

### 7. The Settlement Class is ascertainable.

Finally, the Settlement Class is ascertainable. Although not an element of Rule 23, the ascertainability requirement imposes a modest bar. This simply requires the class to be defined based on "objective" criteria. *Mullins,* 795 F.3d at 672.

Here, the Settlement Class definition is based entirely on objective components: (1) employment at one of Pret's Illinois locations; and (2) use of the timekeeping system at issue. Further, Settlement Class Members are not only ascertainable, but can be readily identified from Pret's records. Accordingly, the ascertainability requirement is satisfied. *Mullins,* 795 F.3d at 672.

As shown above, the Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), as well as the Seventh Circuit's ascertainability standard. Thus, the Court should certify the proposed Settlement Class.

### D. The proposed Notice plan is constitutionally sound.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra,* at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the *Manual, supra,* at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits 3 and 5 to the Agreement, satisfy all of the criteria above. The Notice Plan provides that direct, individual notice ("Mail Notice") will be mailed by the Administrator to the last known address of each Settlement Class Member within 14 days of entry of the Preliminary Approval Order. Ex. A (Agreement) at §§ II.17, VI.2.A. For all mailings returned as undeliverable, the Administrator will use reasonable means to obtain an updated address and re-issue the Mail Notice to those Settlement Class Members. *Id.* at § VI.2.A.

The Mail Notice provides information about the claims at issue, the cash benefits provided by the Settlement, the process for distributing those cash benefits the proposed attorney fee and incentive awards, and the procedure for excluding oneself or objecting to the Settlement. *See* Ex. A at Ex. 3. Settlement Class Members will have up to and including 60 days from the date the Mail Notice is issued to exclude themselves from the Settlement. *See* Ex. A at § II.19. The Mail Notice shall also direct recipients to the Settlement Website, which will provide Settlement Class Members with 24-hour access to additional information about the case, including important court

28

documents and a detailed "long form" Notice document ("Website Notice"). *See* Ex. A (Agreement) at § VI.2.A-B; *see also id.* at Ex. 3 (Mail Notice); *id.* at Ex. 5 (Website Notice).

Accordingly, the proposed Notice Plan passes muster and should be approved.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiff as class representative; (3) appoint her attorneys, Keogh Law, Ltd. as Class Counsel; (4) approve the proposed Notice Program, to be administered by ALCS; (5) direct that Notice be provided to the Settlement Class pursuant to the terms of the Agreement; (6) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Class; (7) set a deadline after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Settlement Class, or seek to intervene; (8) schedule a hearing to consider final approval of the Settlement and set the following schedule as set forth in the draft Preliminary Approval Order attached as Exhibit C, which provides the following schedule:

| | |
|---|---|
| _____, **2021** [21 days after the date of this Order] | Deadline for the Settlement Administrator to send notice to the Settlement Class in accordance with the Agreement and this Order (Notice Deadline) |
| _____, **2021** [Same as Notice Deadline] | Deadline for Plaintiff to file his Motion for Attorneys' Fees and Expenses, and any Incentive Award |
| _____, **2022** [60 days after Notice Deadline] | Deadline for any member of the Settlement Class to request exclusion from the Settlement or object to the Settlement in accordance with the Notice and this Order (Opt-Out and Objection Deadline) |
| _____, **2022** | Deadline for Plaintiff to file: (1) Motion and memorandum in support of final approval, including proof of class notice; and |

| | |
|---|---|
| [21 days after the Opt-Out, Objection, and Claim Deadline] | (2)  Response to any objections. |
| _____, 2022 at _____ _.m. [Court's Convenience] | Final Approval Hearing |
| | |

Dated: January 12, 2022                    Respectfully submitted,

                                             **KAYLA QUARLES, individually and on behalf of all others similarly situated,**

                                       By:  /s/ Gregg M. Barbakoff
                                              Keith J. Keogh
                                              Gregg M. Barbakoff
                                              KEOGH LAW, LTD.
                                              55 W. Monroe St., Suite 3390
                                              Chicago, Illinois 60603
                                              Tel.: (312) 726-1092
                                              Fax: (312) 726-1093
                                              keith@keoghlaw.com
                                              gbarbakoff@keoghlaw.com

                                              *Attorney for Plaintiff and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 12, 2022, I served the foregoing Plaintiff's Rule 26(a)(1) Initial Disclosures via e-mail on the following counsel of record:

> Jaime L. Filipovic
> Matthew E. Szwajkowski
> O'HAGAN MEYER LLC
> One East Wacker Dr., Suite 3400
> Chicago, Illinois 60601
> jfilipovic@ohaganmeyer.com
> mszwajkowski@ohaganmeyer.com
>
> *Attorneys for Defendant*

By: s/ Gregg M. Barbakoff
Gregg M. Barbakoff