**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAYLA QUARLES, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 20-cv-7179 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Hon. Manish S. Shah |
| PRET A MANGER (USA) LIMITED, | ) ) | Presiding Judge |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM
IN SUPPORT OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

124247

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................ - 1 -

II.  RELEVANT BACKGROUND .................................................................. - 2 -

    A.   Procedural History. ........................................................................ - 2 -

    B.   Class Counsel negotiated an extremely favorable Settlement. ......................... - 3 -

III. ARGUMENT ............................................................................................. - 5 -

    A.   The Court should award attorney fees based on a percentage of the
        common fund. .................................................................................. - 5 -

    B.   Class Counsel's request is within the market rate. ........................... - 8 -

      1.   Analysis of the relevant market for legal services support the fee request. ....... - 9 -

      2.   The risk of non-payment also supports the requested fee award..................... - 10 -

      3.   The benefits conferred on the Settlement Class also supports the requested
         fee award. ........................................................................... - 11 -

    C.   Class Counsel's litigation expenses should be approved. .............................. - 13 -

    D.   The Requested Service Award for Ms. Quarles should be approved. ............ - 13 -

IV.  CONCLUSION ......................................................................................... - 15 -

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Benzion v. Vivint, Inc.*,
No. 12-61826 (S.D. Fla.) ......................................................................................15

*Birchmeier v. Caribbean Cruise Line, Inc.*,
896 F.3d 792 (7th Cir. 2018) ..................................................................................1

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................5

*Bryant v. Loews Chicago Hotel, Inc.*,
No. 1:19-cv-03195 (N.D. Ill. Oct. 30, 2020) ...........................................................7

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ...............................................................................13

*Diaz v. Greencore USA – CPG Partners, LLC*,
2017-CH-13198 (Cir. Ct. Cook Cty.)......................................................................12

*Dixon v. Smith Senior Living*,
No. 1:17-cv- 08033 (N.D. Ill. Aug. 20, 2019).....................................................7, 14

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) .....................................................................................7

*Gaskill v. Gordon*,
942 F. Supp. 382 (N.D. Ill. 1996) ....................................................................6, 7, 9

*Hageman v. AT & T Mobility LLC*,
No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015).................15

*Heekin v. Anthem, Inc.*,
No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)...................................15

*Ikuseghan v. Multicare Health Sys.*,
No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016).......................14

*In re Amino Acid Lysine Antitrust Litig.*,
No. 95 Civ.7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996)......................................6

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011) .................................................................7, 11

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ...........................................................................5

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001). .....................................................................................6

*In re FedEx Ground Package System, Inc. Employment Practices Litig.*,
251 F. Supp. 3d 1225 (N.D. Ind. 2017).....................................................................5

*In re Synthoid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) .................................................................................5, 6

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .....................................................................................8

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)............................................................................7

*Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*,
No. 2019-CH-01813 (Cir. Ct. Cook Cty.) ...............................................................12

*Jones v. CBC Rest. Corp.*,
1:19-cv-06736 (N.D. Ill.) ...................................................................................12, 14

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) .....................................................................................9

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)................................................................................6

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
No. 08CV3610 CLW, 2015 WL 2383358 (D.N.J. May 18, 2015).............................14

*Lees v. Anthem Ins. Companies Inc.*,
No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) .....................14

*Marshall v. Life Time Fitness, Inc.*,
17-CH-14262 (Cir. Ct. Cook Cty.) .....................................................................12, 14

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992)......................................................................................7

*McDaniel v. Qwest Communs. Corp.*,
Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591 (N.D. Ill. Aug. 29, 2011) ...........6, 9

*McGee v. LSC Communications*,
No. 2017-CH-12818 (Cir. Ct. Cook Cty.) .......................................................................9

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ...........................................................................................8

*Prelipceanu v. Jumio* Corp.,
18-CH-15883 (Cir. Ct. Cook Cnty.) .......................................................................12, 14

*Primax Recoveries, Inc. v. Sevilla*,
324 F.3d 544 (7th Cir. 2003) ...........................................................................................5

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) .......................................................................................6, 8

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
Case No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...................................9

*Sekura v. L.A. Tan Enters., Inc.*,
No. 2015-CH-16694 (Cir. Ct. Cook Cty.) .......................................................................9

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) .....................................................................................8, 11

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) .....................................................................................5, 10

*Svagdis v. Alro Steel Corp.*,
No. 2017-CH-12566 (Cir. Ct. Cook Cty.) .......................................................................9

*Taubenfeld v. Aon Corp.*,
415 F.3d 597 (7th Cir. 2005) .....................................................................................8, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ..............................................................................................6

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
No. 2018-CH-02140 (Cir. Ct. Cook Cty.) ..................................................................9, 12

**Statutes**

735 ILCS 5/13.........................................................................................................................2

740 ILCS 14/1, *et seq.*................................................................................................1, 4, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On January 18, 2022, this Court preliminarily approved a proposed class action settlement between Plaintiff Kayla Quarles ("Plaintiff" or "Quarles") and Defendant Pret a Manger (USA) Limited ("Pret" or "Defendant"). This Settlement creates a $677,450.00, non-reversionary common fund ("Settlement Fund") to compensate 797 former employees for Pret's alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* If finally approved, all Settlement Class Members who do not timely exclude themselves from the Settlement ("Settlement Class Participants") will automatically receive an equal, *pro rata* distribution of the Settlement Fund, without the need to file a claim or any other paperwork. After deductions for Notice and Administration Expenses, approved costs, attorneys' fees, and any Service Award, each Settlement Class Participant is estimated to receive a check for $518.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $240,282.00 which represents 36% of the settlement fund net administration costs[1] of $10,000, plus $9,173.00 for counsel's out-of-pocket costs.[2] *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million.)

This request should be approved because (1) it represents the market rate for this type of settlement and (2) represents a reasonable and appropriate amount in light of the substantial risks

---

[1] $677,450.00 fund minus $10,000 administration costs equals $667,450, of which 36% equates to $240,282.00.

[2] These expenses do not include any internal costs such as copying, legal research or telephone costs. *See* Declaration of Keith J. Keogh ("Keogh Decl."), ¶ 19, attached hereto as Exhibit A.

presented in prosecuting this action, as well as the quality and extent of work conducted Class Counsel performed. Class Counsel also respectfully move the Court for a service award of $5,000 to Plaintiff Quarles for her work on behalf of the Settlement Class. Such an award is routine and proper.

## II.    RELEVANT BACKGROUND

### A. Procedural History.

On November 4, 2020, Plaintiff filed this class action in the Circuit Court of Cook County, asserting claims for violation of Sections 15(a)-(b) of BIPA stemming from the biometric timekeeping system used at Pret's Illinois locations. In particular, the Complaint alleges Pret captured, stored, and used its employees' biometric data without first: (1) complying with Section 15(b)'s informed consent regime; and (2) implementing and adhering to the biometric retention and destruction policies mandated by Section 15(a).

On December 4, 2020, Pret removed this case to federal court. *See* ECF No. 1. On January 11, 2020, Pret moved the Court to stay this matter pending the Illinois Appellate Court's decision in *Tims v. Black Horse Carriers, Inc.*, which the Court subsequently denied. *See* ECF Nos. 9-10.

On January 6, 2021, Pret filed a motion to dismiss under Rule 12(b)(6), contending that Plaintiff's claims were subject to—and thus barred by—the one-year statute of limitations set forth in 735 ILCS 5/13-201. *See, generally,* ECF No. 13. On January 26, 2021, Plaintiff filed her Response in Opposition to the Motion to Dismiss. *See* ECF No. 14.

Pret subsequently retained new counsel, and shortly thereafter filed a renewed motion to stay, as well as a motion for leave to file an Amended Motion to Dismiss ("Amended Motion"). *See* ECF Nos. 15-22. On February 3, 2021, the Court granted Pret's motion for leave to file the Amended Motion, denied the pending motion to dismiss as moot, and entered and continued Pret's

- 2 -

renewed Motion to Stay. ECF No. 21.

On February 3, 2021, Pret filed its Amended Motion, which asserted myriad substantive grounds for dismissal. *See, generally,* ECF No. 22. After receiving full briefing on the issues, the Court denied the Amended Motion on April 26, 2021, and directed Pret to respond to the Complaint. *See* ECF No. 27. On May 25, 2021, Pret filed its Answer and Affirmative Defenses to Plaintiff's Complaint. Shortly thereafter, the Parties commenced written discovery in the form of interrogatories and document requests.

The Parties subsequently agreed to mediate this dispute on August 23, 2021 before the Honorable Morton Denlow (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases.[3] With the assistance of Judge Denlow—and eight hours of arm's-length negotiations—the Parties reached an agreement-in-principle on the material terms of a class-wide settlement. Following the mediation, the Parties continued extensive negotiations over several months on their remaining points of dispute, which resulted in the Agreement for which the Parties now seek final approval. *See* Ex. A (Keogh Decl.), ¶ 5.

**B. Class Counsel negotiated an extremely favorable Settlement.**

The Settlement here is structured to provide meaningful cash relief to the largest possible pool of recipients. As noted above, Pret agreed to create a $677,450.00 common fund for a Settlement Class of 797 persons defined as:

> All individuals employed by Defendant Pret a Manger (USA) Limited and any other related entities in the State of Illinois who logged onto, interfaced with, or used any software, systems, or devices that used the individual's finger, hand, or any biometric identifier of any type ("Biometric Systems") in Illinois, including any employee of the above entities who has a claim under the Illinois Biometric

---

[3] *See* Ex. A (Keogh Decl.), ¶ 4.

Information Privacy Act, 740 ILCS 14/1, *et seq.,* from November 4, 2015 through the date of preliminary approval.

*See* Settlement Agreement, §§ II.29; V.1 a copy of which is attached hereto as Exhibit B.

The Settlement calls for a straight distribution where each every class member who does not exclude themselves will automatically receive their *pro rata* portion of the Settlement Fund without the need to submit a claim form or any other paperwork. *See id.* at §§ II.5, X.2**.** The Settlement is also completely non-reversionary—all undistributed amounts remaining in the Settlement Fund after the initial round of payments is disbursed will, to the extent administratively feasible, be redistributed to the Settlement Class Participants through a second distribution ("Second Distribution"). *Id.* at §§ X.2-3.[4]

Thus, each of the 797 Settlement Class Members stand to receive $518 after deductions for Notice and Administration costs, approved attorneys' fees, litigation expenses, and a court-approved Service Award. This is an outstanding result, given that BIPA provides $1,000 in statutory damages for each negligent violation. *See* 740 ILCS 14/20(1).

As such, Plaintiff respectfully requests that the Court approve attorneys' fees of $240,282.00 which represents 36% of the net Settlement Fund,[5] plus $9,177.00 in litigation expenses, and a $5,000 Service Award for Plaintiff Quarles. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Along that line, the requested Service Award is comparable to others awarded in similar cases.

---

[4] If a Second Distribution is not feasible, the remaining funds will be distributed to a court approved *cy pres* recipient. Ex. B (Settlement Agreement). at § X.3.

[5] Once again, net Settlement Fund is $667,450 after the $10,000 notice and administration costs are deducted.

### III.   ARGUMENT

####   A.  The Court should award attorney fees based on a percentage of the common fund.

The Seventh Circuit has followed the Supreme Court in recognizing when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003)(creation of a common fund "entitles [counsel] to a share of that benefit as a fee").

The Court should use the percentage of the fund approach to determine a reasonable fee award in this case. The Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to ex ante." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthoid Mktg. Litig.*, 325 F.3d 974, 979-80 ("*Synthroid II*") (7th Cir. 2003)); *see also In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" and that, "had an arm's length negotiation been feasible, the

court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").[6]

One of the primary advantages the percentage of the fund approach has over the lodestar approach—and a substantial reason why percentage of the fund more accurately represents the "market rate"—is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.). The percentage of the fund approach, by contrast, promotes early resolution and eliminates the incentive for plaintiffs' attorneys to inflate their billable hours by engaging in wasteful litigation. *See Synthroid II*, 325 F.3d at 979-80. By limiting attorneys' fees to a percentage of the common fund, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

---

[6] In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys"). The trend in other circuits is to use the percentage of the fund method, as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001); *see also McDaniel v. Qwest Communs. Corp.*, Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.") (Pallmeyer, J.).

Along that line, the percentage of the fund approach preserves judicial resources by sparing the Court the cumbersome task of reviewing complicated and lengthy billing records. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). As one seminal case put the point:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill,* 942 F. Supp. at 386 (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable.").

For this reason, courts in this district routinely apply the percentage of the common fund method and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making); *see also Bryant v. Loews Chicago Hotel, Inc.,*No. 1:19-cv-03195, ECF No. 77 (N.D. Ill. Oct. 30, 2020); *Dixon v. Smith Senior Living*, No. 1:17-cv- 08033, ECF No. 103 (N.D. Ill. Aug. 20, 2019).

**B. Class Counsel's request is within the market rate.**

In applying the percentage of the common fund approach, the Court must decide what percentage of the common fund is appropriately awarded as attorney's fees.

This requires a threshold determination as to the net common fund, as there is a "presumption" that fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). To that end, the Seventh Circuit directs district courts to analyze "(1) the fee to (2) the fee plus what the class members receive[]." *Id.* at 781 (quoting *Redman*, 768 F.3d at 630). The fee request falls squarely within this presumption, as Class Counsel seeks $240,282.00 in fees, which amounts to 36% of the net Settlement Fund ($240,282.00 fee / $667,450 [fee + amount to class]).

Next, the Court must determine whether a 36% fee award is reasonable in light of the prevailing market rate. *See, e.g., Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (holding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). To that end, a district court should "do [its] best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Other factors are relevant, as well, including the risk counsel undertook in accepting the case and the quality of their performance. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 ("*Synthroid I*") (7th Cir. 2001). As explained below, each of these factors supports the requested fee.

**1. Analysis of the relevant market for legal services support the fee request.**

As noted above, the percentage of the fund method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Id.* (emphasis in original).

Here, Class Counsel seeks a fee award of 36% of the net Settlement Fund. This percentage is consistent with standard contingency fee awards in this Circuit, which range from 33% to 40% of the amount recovered. *See, e.g., Gaskill*, 160 F.3d at 362–63 (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee ranges "between 33 1/3% and 40%" of amount recovered); *McDaniel*, 2011 U.S. Dist. LEXIS 154591, at *11-12 ("[T]he real world market range for contingent fee cases is 33% to 40%.").

More specifically, the 36% sought here is less than the percentage of the gross (rather than net) settlement fund commonly awarded by Illinois courts in similar BIPA cases. *See, e.g., Sekura v. L.A. Tan Enters., Inc.,* No. 2015-CH-16694 (in BIPA case, awarding 40% of total fund); *Zepeda v. Intercontinental Hotels Grp., Inc.,* No. 2018-CH-02140 (Cir. Ct. Cook Cty. Dec. 5, 2018) (same); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566, No. 2017-CH-12566 (Cir. Ct. Cook Cty. Jan. 14, 2019) (same); *Zhirovetskiy v. Zayo Group, LLC,* No. 2017-CH-09323 (Cir. Ct. Cook Cty. April 8, 2019) (same); *McGee v. LSC Communications*, No. 2017-CH-12818 (Cir. Ct. Cook Cty. Aug. 7, 2019) (same).

- 9 -

Accordingly, the prevailing market rate for contingency fee cases generally, and for BIPA class actions in particular, both confirm the reasonableness of the requested fee award.

### 2. The risk of non-payment also supports the requested fee award.

The reasonableness of the requested fee award is further bolstered by the significant risk of non-payment Class Counsel faced at the outset of this litigation. *See Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorneys' fees); *Synthroid I*, 264 F.3d at 718 (court should "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers … at the outset of the case (that is, when the risk of loss still existed)").

By taking this case on a contingency fee basis, Class Counsel assumed the risk they would receive no payment for their services. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As discussed in Plaintiff's motion for preliminary approval, Pret raised several legal and factual defenses that, if successful, would have precluded any recovery in this case. Specifically, Pret intended to evade liability by demonstrating: (1) the timekeeping system at issue doesn't capture the type of "biometric identifiers" or "biometric information" covered by BIPA (an issue that would require costly expert and third-party discovery); (2) Pret's good-faith interpretation of BIPA precludes any finding of negligence or recklessness, which are prerequisites for recovering statutory damages; (3) the doctrines of waiver, estoppel, ratification, acquiescence, and assumption of the risk barred any right of recovery; and (4) any award of statutory damages would violate Pret's right to due process under the Illinois and United States Constitution. *See* ECF No. 44 at 16-18; *see also* Ex. A (Keogh Decl.), ¶¶ 10-12, 14.

- 10 -

While Class Counsel remain confident Plaintiff would have prevailed, success—especially at the outset of the case—was by no means assured. To the contrary, the risk of loss was particularly acute given the dearth of legal authority on Pret's affirmative defenses. *See Silverman*, 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Apart from jeopardizing any recovery for the class, litigating those issues would have required Class Counsel to expend significantly more time, money, and resources—including potentially substantial expert fees—for which they would receive no compensation upon losing at summary judgment, class certification, or trial.  *See* Ex. A (Keogh Decl.), ¶¶ 11-17; *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class). As such, the considerable risk[7] Class Counsel faced in prosecuting this action on a contingency fee basis illustrates the reasonableness of the requested fee award.

### 3. The benefits conferred on the Settlement Class also supports the requested fee award.

The quality of Class Counsel's performance, as demonstrated by the Settlement itself, further supports the requested fee award.  As noted above, each Settlement Class Participant will receive $518 after Court-approved reductions for attorneys' fees and expenses, a Service Award

---

[7] Another risk is Pret could have filed bankruptcy as it closed all of its Illinois locations after this case was filed, which further supports the risk when Plaintiff maintained the litigation after the stores closed.

for Plaintiff, and Administration Expenses. These payments will arrive via check, without the need to submit a claim form (or take any other steps, for that matter).

This is an outstanding result when viewed against the potential $1,000 recovery[8] Plaintiff could have obtained had she proven a negligent violation of BIPA at summary judgment or trial *after* prevailing at class certification, *see* 740 ILCS 14/20(1), which would have entailed years of additional litigation. What's more, the gross recovery of $849.43/net recovery of $518 afforded by the Settlement compares favorably to other BIPA settlements that have received final approval. *See, e.g., Jones v. CBC Rest. Corp.,* 1:19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (gross recovery of $800 per class member); *Prelipceanu v. Jumio* Corp., 18-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant);[9] *Zhirovetskiy v. Zayo Group, LLC,* 17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (gross recovery of $450 per class member); *Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*, No. 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) (gross recovery of $894.98 per class member); *Diaz v. Greencore USA – CPG Partners, LLC*, 2017-CH-13198 (Cir. Ct. Cook Cnty. Aug. 30, 2019) (gross recovery of $696.27 per clas member); *Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (net recovery of $270 per claimant, plus dark web monitoring valued at $130).

Moreover, the Settlement was achieved after Class Counsel spent more than a year litigating this case, which entailed: (1) conducting significant pre- and post-suit research into the rapidly evolving case law on BIPA; (2) briefing two contested motions to dismiss; (3) analyzing

---

[8] It's still an open issue whether individuals are entitled to $1,000 every time BIPA protected information is taken, or if they are entitled to $1,000 total.

[9] This settlement was structured as a claims-made framework. While the Parties briefs did not disclose the number of participants or net recovery per claimant, the settlement website states that claimants would receive up to $262.28 per person. *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/illinois-jumio-biometric-class-action-settlement/?nowprocket=1 (last visited January 24, 2022).

the strength and weaknesses of Plaintiff's claims and Pret's affirmative defenses; (4) taking discovery on, among other issues, the makeup of the proposed class, the data captured by Pret's timekeeping system, the manner in which Pret handled and stored the data collected by its timekeeping system, and Pret's policies and practices regarding the collection, use, and storage of biometric data; (5) preparing an extensive mediations statement setting forth Plaintiff's legal and factual theories; and (6) participating in an eight-hour mediation before Judge Denlow. *See* Ex. A (Keogh Decl.), ¶ 5. These efforts, combined with the outstanding results Class Counsel achieved, further supports the requested fee award.

For all these reasons, the requested fee award is reasonable and should be granted.

### C. Class Counsel's litigation expenses should be approved.

The Settlement provides that Class Counsel may apply to the Court for payment of litigation expenses. To that end, Class Counsel seeks reimbursement for $9,177.00 of actual costs incurred in prosecuting this action, which only include the filing fee, the service of process fee, and mediation fees. *See* Ex. A (Keogh Decl.), ¶ 20. Because these charges were necessary in order to litigate and settle the case, Class Counsel's request for reimbursement of those expenses from the gross Settlement Fund is appropriate and should be approved.

### D. The Requested Service Award for Ms. Quarles should be approved.

Class Counsel also respectfully request the Court grant a service award of $5,000 to Plaintiff Kayla Quarles for her efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an

individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff's role in this litigation was crucial. Plaintiff sacrificed her time to prosecute this case on behalf of the 797 individuals who used Pret's timekeeping system. *See* Ex. A (Keogh Decl.), ¶ 22. Plaintiff assisted with Class Counsel's pre-suit investigation into the case, analyzed and verified the facts set forth in the Complaint prior to filing, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the Settlement. *Id.*

Moreover, the $5,000 Service Award sought here is comparable to or less than others approved by Illinois state and federal courts in similar BIPA disputes, as well those approved by federal courts throughout the country in analogous class actions. *See, e.g., Dixon*, No. 1:17-cv-08033, ECF No. 103 (approving $10,000 service award in BIPA settlement); *Prelipceanu*, 18-CH-15883 (same); *Jones*, 1:19-cv-06736, ECF No. 53 (approving $7,500 service award in BIPA settlement); *Marshall*, 17-CH-14262 (approving $5,000 service award in BIPA class action); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, ECF No. 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-

BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement). The requested service award of $5,000 for Plaintiff is reasonable and should be approved.

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully request the Court grant this motion and award Class Counsel $240,282.00 in attorneys' fees, which represents 36% of the net Settlement Fund, plus $9,177.00 of counsel's out-of-pocket costs. Class Counsel further requests that the Court approve a service award to Plaintiff Quarles in the amount of $5,000.

Dated: January 27, 2022

Respectfully submitted,

**KAYLA QUARLES, individually and on behalf of all others similarly situated,**

By:   /s/ Gregg M. Barbakoff
Keith J. Keogh
Gregg M. Barbakoff
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
Tel.: (312) 726-1092
Fax: (312) 726-1093
keith@keoghlaw.com
gbarbakoff@keoghlaw.com

*Attorney for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 27, 2022, I caused a copy of the foregoing document, including all attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.

<u>  /s/ Gregg M. Barbakoff      </u>