**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KAYLA QUARLES, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | Case No. 20-cv-7179 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Manish S. Shah |
| | ) | Presiding Judge |
| PRET A MANGER (USA) LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM**

128322

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT BACKGROUND ............................................................................ 2

    A.    The Biometric Information Privacy Act. ................................................. 2

    B.    Plaintiff's allegations. ............................................................................. 3

    C.    Procedural History. ................................................................................. 4

    D.    The proposed Settlement.......................................................................... 5

        1.    The Settlement Class................................................................... 5

        2.    Monetary relief for Settlement Class Members. ....................... 6

        3.    *Cy pres* distributions. ............................................................... 6

        4.    Settlement Class release.............................................................. 7

        5.    Class Representative Service Award. ........................................ 7

        6.    Attorneys' fees and costs. .......................................................... 8

II.    ARGUMENT ...................................................................................................... 8

    A.    The settlement approval process. ............................................................ 8

    B.    The Settlement is Fair, Reasonable, Adequate, and Should be Approved. ......... 10

        1.    The Class has been adequately represented. ............................ 11

        2.    The Settlement resulted from arm's length negotiations. ........ 12

        3.    The proposed Settlement treats Settlement Class Members equally. ...... 13

        4.    The relief provided to the Settlement Class is more than adequate......... 13

            a.    The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval. .................................................................. 15

            b.    The proposed method of distribution is effective. ........... 17

            c.    The proposed attorney fee award and timing of payment support approval................................................ 18

IV.    CONCLUSION.................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
  (N.D. Ill. May 5, 2011) ............................................................................................................ 17

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400
  (N.D. Ill. Mar. 2, 2017) ............................................................................................................ 13

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305
  (7th Cir. 1980) .............................................................................................................................. 9

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792
  (7th Cir. 2018) ...................................................................................................................... 8, 19

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
  No. 1:18-cv-07018
  (N.D. Ill. Sept. 10, 2020) ......................................................................................................... 19

*Felzen v. Andreas*,
  134 F.3d 873
  (7th Cir. 1998) .............................................................................................................................. 9

*Fournigault v. Independence One Mortgage Corp.*,
  234 F.R.D. 641
  (N.D. Ill. 2006) .......................................................................................................................... 11

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093,
  (N.D. Ill. Oct. 10, 1995) ...................................................................................................... 9, 17

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368
  (S.D. Ill. Dec. 13, 2018) ........................................................................................................... 18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330
  (N.D. Ill. 2010) .......................................................................................................................... 14

*In re Google Buzz Privacy Litig.*,
  No. C 10-00672 JW, 2011 WL 7460099
  (N.D. Cal. June 2, 2011) ........................................................................................................... 14

*In re Google LLC Street View Electronic Communications Litigation*,
No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928
(N.D. Cal. Mar. 18, 2020) ..................................................................................... 14

*In re Southwest Airlines Voucher Litig.*,
No. 11-cv-8176, 2013 WL 4510197
(N.D. Ill. Aug. 26, 2013) ..................................................................................... 2,16

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
728 F.3d 682
(7th Cir. 2013) ....................................................................................................... 6,7

*Isby v. Bayh*,
75 F.3d 1191
(7th Cir. 1996) ......................................................................................................... 9

*Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*,
No. 2019-CH-01813
(Cir. Ct. Cook Cty. Oct. 18, 2019) ........................................................................ 14

*Jones v. CBC Rest. Corp.*,
1:19-cv-06736
(N.D. Ill. Oct. 22, 2020) .................................................................................. 14, 20

*Lane v. Facebook, Inc.*,
696 F.3d 811
(9th Cir. 2012) ........................................................................................................ 14

*Lawrence v. First Fin. Inv. Fund V, LLC*,
No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184
(D. Utah Aug. 26, 2021) ........................................................................................ 18

*Martin v. JTH Tax, Inc.*,
No. 13-6923
(N.D. Ill. Sept. 16, 2015) ....................................................................................... 19

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815
(1999) ...................................................................................................................... 13

*Parker v. Time Warner Entm't Co., L.P.*,
631 F. Supp. 2d 242
(E.D.N.Y. 2009) ..................................................................................................... 15

iii

*Phillips Randolph Enters., LLC v. Rice Fields*,
   No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
   (N.D. Ill. Jan. 11, 2007) ............................................................................................. 17

*Rysewyk v. Sears Holdings Corp*.,
   Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004
   (N.D. Ill. Jan. 29, 2019) ............................................................................................. 10

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560
   (N.D. Ill. 2011) ........................................................................................................... 17

*Schulte v. Fifth Third Bank*,
   No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810
   (N.D. Ill. Sept. 10, 2010) ........................................................................................... 13

*Sekura v. L.A. Tan Enters., Inc.*,
   2015-CH-16694
   (Cir. Ct. Cook Cty. Dec. 1, 2016) .............................................................................. 19

*Snyder v. Ocwen Loan Servicing, LLC,*
   No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926
   (N.D. Ill. May 14, 2019) ............................................................................................. 12

*Svagdis v. Alro Steel Corp.*,
   2017-CH-12566
   (Cir. Ct. Cook Cnty.) .................................................................................................. 19

*Taylor v. Shutterfly, Inc.,*
   No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069
   (N.D. Cal. Dec. 7, 2021) ............................................................................................. 18

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859
   (7th Cir. 2014) ............................................................................................................. 10

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
   2018-CH-02140
   (Cir. Ct. Cook Cnty.) .................................................................................................. 19

*Zhirovetskiy v. Zayo Group, LLC*,
   17-CH-09323
   (Cir. Ct. Cook Cty. Apr. 8, 2019) .............................................................................. 14

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA"),
  740 ILCS 14/1, *et seq.* ........................................................................................ 2, 3

**Treatises**

Herbert B. Newberg & Alba Conte, *4 Newberg on Class Actions* § 13:53
  (5th ed. 2015) ............................................................................................................ 18

Herbert B. Newberg & Alba Conte, 4 *Newberg on Class Actions* §§ 11.25 and 11.41
  (4th ed. 2002) ......................................................................................................... 9, 10

*Manual for Complex Litig.* §§ 21.63
  (Fourth) (2004) ........................................................................................................... 9

**Other Authorities**

Illinois House Transcript, 2008 Reg. Sess. No. 276
  (May 30, 2008) ............................................................................................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Kayla Quarles respectfully moves the Court for final  approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant Pret a Manger (USA) Limited ("Pret" or "Defendant") (collectively, the "Parties") attached hereto as *Exhibit 1*.

Ms. Quarles alleges Pret violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting its employees' fingerprints without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.

The Settlement provides $677,450 in a non-reversionary fund for a Settlement Class of approximately 797 former Pret employees.[1] If approved, each Class Member will receive an equal, *pro-rata* distribution without the need to have filed a claim or take any other action. Plaintiff estimates[2] that every class member would receive $518 without the need for a claim form.

On January 18, 2022, the Court granted preliminary approval of the Settlement, finding the settlement within the range of reasonableness, and thus that the class should be given notice of the Settlement and an opportunity to object to the Settlement or opt out of it. ECF No. 46.

Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated via mail to 100% of the class.  *See Exhibit 2,* Declaration of Keith Salhab, ¶¶ 6-9 ("Salhab Decl."). Out of the 797 notices issued, only 73 have been deemed undeliverable. *Id.* at ¶ 9.

---

[1] During the pandemic, Pret closed every location it owned and operated in the State of Illinois.

[2] Plaintiff's estimate is based on a pro-rata distribution after deduction of $10,000 administration costs, $9,173 in reimbursed expenses, $5,000 for incentive award, and $240,282 for fees. As explained below, Plaintiff will separately file a fee petition and there is no clear sailing agreement for fees or incentive award.

At the same time as notice was mailed, Plaintiff filed her motion for attorney fees ad incentive award (ECF. No. 47), which was posted to the settlement website for class members to review. *See* https://www.pamillinoissettlement.com/page/docs (Last visited April 18, 2022).

No class member excluded themselves and no class member objected to any portion of the Settlement. *See* Ex. 2 (Salhab Decl.), ¶¶ 10-11. To be sure, this complete absence of objections points to the reasonableness of the Settlement. *See In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, is a great result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of these claims.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## II.    RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally-identifiable information, biometric information such as fingerprints cannot be changed (much less replaced) when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in 2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g). The statute features several safeguards that protect Illinois' citizens' ability to maintain control over their biometric information.

2

One such safeguard is Section 15(b)'s informed consent regime. As relevant to this case, this provision prohibits an employer from collecting its employee's biometric information without first: (1) providing the employee with a written disclosure explaining that biometric information is being collected, the reason for the collection, and the length of time for which the biometric information will be retained; and (2) obtaining a signed written release from the employee authorizing the collection. 740 ILCS 14/15(b).

Section 15(a) of BIPA, in turn, requires an employer who possess biometric information to destroy that data once the purpose for which it was collected has been satisfied. *See* 740 ILCS 14/15(a).

## B. Plaintiff's allegations.

Pret is an international sandwich chain that owns and operates locations throughout the country, thirteen of which were previously situated in the Chicago area. Plaintiff worked at one such location from April 2018 to January 2019. Compl., ¶¶ 27-29.

As alleged in the Complaint, Pret required Plaintiff (like all other new employees) to use a biometric timekeeping system that verified her identity through a fingerprint scan. *Id.* at ¶¶ 8-9, 24, 28-31. Plaintiff alleges Pret required new hires such as herself to scan their fingerprints to enroll in Pret's employee fingerprint database, and to subsequently use their fingerprints in order to clock in and out of work. *Id.* at ¶¶ 24, 28-31.

According to Plaintiff, Pret's implementation of this biometric timekeeping system directly violated BIPA in two discrete ways. First, Plaintiff alleges Pret violated Section 15(a) of the statute by failing to implement and adhered to a publicly-available policy governing the retention and destruction of its employees' biometric data. *See id.* at ¶¶ 26, 36-37, 44-52. Second, Plaintiff alleges Pret violated Section 15(b) by collecting, storing, and using its employees' biometric data

without first providing the necessary disclosures or receiving informed written consent. *Id.* at ¶¶ 24-25, 32-35, 53-62.

**C. Procedural History.**

On November 4, 2020, Plaintiff filed this class action in the Circuit Court of Cook County. Pret removed the case to this Court on December 4, 2020, *see* ECF No. 1, where it remains pending.

On January 11, 2020, Pret moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc. See* ECF No. 9. The Court denied this Motion on December 14, 2020, and directed Pret to respond to the Complaint. *See* ECF No. 10.

On January 6, 2021, Pret filed a motion to dismiss under Rule 12(b)(6), contending that Plaintiff's claims were subject to—and thus barred by—the one-year statute of limitations set forth in 735 ILCS 5/13-201. *See, generally,* ECF No. 13. On January 26, 2021, Plaintiff filed her Response in Opposition to the Motion to Dismiss. *See* ECF No. 14.

Pret subsequently retained new counsel, and shortly thereafter filed a renewed motion to stay, as well as a motion for leave to file an Amended Motion to Dismiss ("Amended Motion"). *See* ECF Nos. 15-22. On February 3, 2021, the Court granted Pret's motion for leave to file the Amended Motion, denied the pending motion to dismiss as moot, and entered and continued Pret's renewed Motion to Stay. ECF No. 21.

On February 3, 2021, Pret filed its Amended Motion, which asserted myriad substantive grounds for dismissal. *See, generally,* ECF No. 22. After receiving full briefing on the issues, the Court denied the Amended Motion on April 26, 2021, and directed Pret to respond to the Complaint. *See* ECF No. 27. On May 25, 2021, Pret filed its Answer and Affirmative Defenses to Plaintiff's Complaint. Shortly thereafter, the Parties commenced written discovery in the form of

4

interrogatories and document requests.

The Parties subsequently agreed to mediate this dispute on August 23, 2021 before the Honorable Morton Denlow (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases.[3] With the assistance of Judge Denlow—and eight-hours of arm's-length negotiations—the Parties reached an agreement-in-principle on the material terms of a class-wide settlement.

Following the mediation, the Parties continued extensive negotiations over several months on their remaining points of dispute, which ultimately culminated in the fully executed Agreement for which the Parties now seek final approval.

### D. The proposed Settlement.

The Settlement's details are contained in the Agreement signed by the Parties. *See* Ex. 1. The following summarizes the Agreement's terms:

#### 1. The Settlement Class.

The Settlement Class is defined as follows:

> All individuals employed by Defendant Pret a Manger (USA) Limited and any other related entities in the State of Illinois who logged onto, interfaced with, or used any software, systems, or devices that used the individual's finger, hand, or any biometric identifier of any type ("Biometric Systems") in Illinois, including any employee of the above entities who has a claim under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.,* from November 4, 2015 through the date of preliminary approval.

Ex. 1 at §§ II.29; V.1.[4]  As noted above, each of the 797 Settlement Class Members were sent direct notice. *See* Ex. 2 (Salhab Decl.), ¶ 6.

---

[3] *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as Exhibit 3, ¶ 4.

[4] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have

## 2. Monetary relief for Settlement Class Members.

The Settlement requires Defendants to create a non-reversionary Settlement Fund of $677,450.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive award approved by the Court. *See* Ex. 1 (Agreement) at §§ II.35, V.5, X.2-3. No amount of the Settlement Fund will revert to Defendants, and Settlement Class Members are not required to submit a claim or take any action to receive compensation. Instead, the class administrator ("Administrator") will automatically issue checks to the last known address of each Settlement Class Member who declines to opt out. *Id.* at §§ II.5, X.2**.** Checks issued to Settlement Class Members shall remain valid for 90 days from the date of their issuance. *Id.* at § X.2. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least five dollars ($5.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id*. at § X.3.

## 3. *Cy pres* distributions.

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, Plaintiff suggests any such funds be sent to the Electronic Privacy Information Center as that organization is closely related to the privacy issues of this BIPA class. Ex. 1 (Agreement) at §X.3.

The Seventh Circuit has required that any potential *cy pres* be closely aligned with the Class' interest. For instance, in *Ira Holtzman, C.P.A., & Assocs. v. Turza*, it rejected the Legal

---

opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement. *Id*.

Assistance Foundation of Metropolitan Chicago, which it acknowledged a worthy organization, as a cy pres recipient in a TCPA case because it was not closely related to the class interests in a TCPA class action. *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) ("Money not claimed by class members should be used for the class's benefit to the extent that is feasible.") The full class notice identified this organization and no Settlement Class member has objected.

### 4. Settlement Class release.

In exchange for the benefits allowed under the Settlement, Settlement Class Members will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims that "relate in any way to information that is or could be protected under [BIPA] or any other similar state, local, or federal law, regulation, or ordinance, or common law, regarding the use, collection, capture, receipt, maintenance, storage, transmission, or disclosure of biometric identifiers that Settlement Class Members claim, might claim, or could have claimed in any court or administrative proceeding." Ex. 1 (Agreement) at § XI.1.

### 5. Class Representative Service Award.

The Agreement provided Plaintiff may petition the Court for a Service Award. Ex. 1 (Agreement) at § V.4. There is no clear sailing provision as to this request and neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id*. Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff has requested a Service Award of $5,000.00. The Class Notice advised the Settlement Class of Plaintiff's request and there was no objection.

7

### 6. Attorneys' fees and costs.

Class Counsel has applied to the Court for an award of attorneys' fees and costs. *See* ECF No. 47. As addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 36% plus reasonable expenses in common fund class settlements after settlement administration costs are deducted. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action.

Like the incentive award, there was no clear sailing agreement on attorney fees. Further, the Class Notice informed the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs. *See* Ex. 2 at *Exhibit A* (Class Notice), p. 1 ("Plaintiff will petition for a service award of $5,000 for Plaintiff Quarles's work in representing the Class and Class Counsel's fees up to thirty six percent of the settlement fund after notice costs are deducted, which equals $240,282.00, plus reasonable expenses.") There were no objection to this request.

## II.    ARGUMENT

### A. The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion" There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient

discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Herbert B. Newberg & Alba Conte, *4 Newberg on Class Actions* § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995) .

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg* § 11.41 (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

The first two steps in this process have occurred. With this motion, Plaintiff respectfully requests that the Court take the third and final step in granting final approval.

**B. The Settlement is Fair, Reasonable, Adequate, and Should be Approved.**

When deciding whether to grant final approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Rysewyk v. Sears Holdings Corp.*, Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019) (Shah, J.).[5] Each of these factors support approval.

---

[5] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

10

**1. The Class has been adequately represented.**

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class'; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first two prongs of the adequacy analysis are satisfied here. Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class she seeks to represent. Plaintiff and the other Settlement Class Members are all former Pret employees who share identical claims arising from a common course of conduct: Pret's allegedly unlawful collection and retention of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, assisting her attorneys in investigating the Settlement Class's BIPA claims, reviewing and approving the Class Action Complaint prior to filing, regularly conferring with her attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See* Ex. 3 (Keogh Decl.) at ¶ 17.

The third prong of the adequacy analysis is also satisfied because proposed Class Counsel have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA, and have been found adequate and appointed class counsel in scores of cases arising under various other consumer protection statutes. *See id.* at ¶¶ 18-48. Drawing on this experience, proposed Class Counsel were able to extensively evaluate the merits of this case, Pret's defenses, the benefits of the proposed Settlement, and the attendant risks of litigation.

Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, briefing and defeating two motions to dismiss, taking discovery into merits and class issues, and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *See id.* at ¶ 4. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy of representation prong met.

### 2. The Settlement resulted from arm's length negotiations.

The second 23(e)(2) factor focuses on whether the Settlement is the product of an "arm's length transaction.  As detailed above, the Settlement is the result of extensive, arm's length negotiations between attorneys experienced in the litigation, certification, trial, and settlement of consumer privacy class actions, carried out during an eight-hour mediation session held before Judge Denlow. *See* Ex. 3 (Keogh Decl.) at ¶¶ 4-5. And, after reaching an agreement on the material points of the Settlement with the assistance of Judge Denlow, the Parties spent the next five months negotiating the finer details of the Agreement before executing it on January 12, 2022.  *Id.* at ¶ 5.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The Settlement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than

an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3.  The proposed Settlement treats Settlement Class Members equally.

The next Rule 23(e)(2) consideration supports approval where the proposed settlement treats all class members the same. Here, each Settlement Class Member has identical BIPA claims against Pret, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). Because there is no disparate treatment between members, the Settlement merits approval.

### 4.  The relief provided to the Settlement Class is more than adequate.

Here, Defendant has agreed to create a $677,000 Settlement Fund for a class of 797 employees. *See* Ex. 1 (Agreement) at § II.35**.** The Settlement Fund is non-reversionary, and each Settlement Payment will be automatically issued to the last known address of each Settlement Class Member. Thus, the Settlement represents a significant and immediate value for those Class Members—a gross amount of $849.43 apiece. Because no class member excluded themselves, Plaintiff estimates every single class member will receive $518 after reductions for Administrative

13

Expenses, attorney's fees, and the incentive award. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

This class relief is in line with, if not superior to, other BIPA settlements that have received court approval. *See, e.g., Jones v. CBC Rest. Corp.,* 1:19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (gross recovery of $800 per class member); *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (gross recovery of $450 per class member); *Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*, No. 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) (gross recovery of $894.98 per class member). It should be noted at the time of settlement, Pret has closed every Illinois location and its financial position is much worse off from when this case was initially filed.

Outside the realm of BIPA, the cash payments afforded by the Settlement Agreement dwarf the recoveries typically seen in privacy class actions, which often provide class members with little or no monetary relief. *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (upholding settlement providing only $9.5 million in *cy pres* relief despite that statutory claims at issue provided for significant statutory damages); *In re Google LLC Street View Electronic Communications Litigation*, No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* distribution of $13 million fund in case with 60 million person class (equating to $0.22 per person before fees, expenses, or administration costs) in Electronic Communications Privacy Act (ECPA) matter with $10,000 available statutory damages); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving settlement consisting solely of $8.5 million *cy pres* payment where statutory

14

claims at issue provided for statutory damages of up to $10,000 per claim). *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 261-62 (E.D.N.Y. 2009) ("When the benefit is . . . placed in the context of the risks and delay of continued litigation[,]" a settlement providing $6.75 per class member was "clearly within the range of reasonableness" for claims brought under the Cable Communications Policy Act of 1984 which provides for minimum statutory damages of $1,000).

In sum, the relief provided by the proposed Settlement is more than adequate when compared against comparable results.

    **a.  The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval.**

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals, as well as the risk that goes with it.

While Plaintiff remains confident in the strength of her claims, Pret denied all of her material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Settlement Class. Pret's primary defense is that it faces no liability under BIPA because the information captured by its timekeeping system's fingertip scanner does not fall within the statutory definition of "biometric identifiers" or "biometric information," but instead falls within a third category outside of BIPA's purview. *See* ECF No. 31 at 22. Defeating this highly-technical defense at would entail costly expert and third-party discovery. While Plaintiff is confident she would prevail on this issue, the lack of any guiding precedent offers no guarantee of success at summary judgment or trial.

In addition, Pret intended to avoid liability by proving, among other issues, that: (1) Pret's reliance on a good-faith interpretation of BIPA precludes a finding of negligence or recklessness; (2) Plaintiff and the Settlement Class's claims are barred on the doctrines of waiver, estoppel, ratification, or acquiescence; and (3) Plaintiff and the Settlement Class assumed the risk of any injuries resulting from Pret's alleged statutory violations. *See* ECF No. 31 at 20-22. A victory on these defenses could doom the case in its entirety or, at the very least, greatly reduce the size of the proposed class and preclude any recovery for scores of class members who stand to benefit from the Settlement. The risks posed by continued litigation is readily apparent given the number of other legal and factual issues that have gone untested to date without controlling legal authority. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

And, before resolving Pret's substantive defenses, Plaintiff would first need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, her success is certainly not guaranteed.

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Pret intended to seek reduction of damages based on the argument an award of $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution. *See* ECF No. 31 at 24. This, too, presents a significant risk to the Settlement Class, as some courts view awards of aggregate, statutory damages with skepticism and reduce such

awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [Defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *14-15 ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of approval.

**b. The proposed method of distribution is effective.**

The next sub-factor analyzes the whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and

expedient a manner as possible" while ensuring "only legitimate claims" are paid. Herbert B. Newberg & Alba Conte, 4 *Newberg on Class Actions* § 13:53 (5th ed. 2015).

Unsurprisingly, courts routinely find this factor satisfied where class members do not need to take any affirmative steps to receive their portion of the settlement fund. *See, e.g., Taylor v. Shutterfly, Inc.,* No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *20 (N.D. Cal. Dec. 7, 2021) (finding distribution method reasonable where "[a]ll Class Members automatically receive benefits under the Settlement, without the need to file a Claim."); *Lawrence v. First Fin. Inv. Fund V, LLC,* No. 2:19-cv-00174-RJS-CMR, 2021 U.S. Dist. LEXIS 162184, at *14-15 (D. Utah Aug. 26, 2021) ("Here, the method of distributing relief to the class is sufficiently effective and no claims process is required. Because the class members can be individually identified from First Financials records, no action is required of any class member to receive the benefits of the Settlement.").

The same result is warranted here. Settlement Class Members do not need to submit a claim form or take any action to obtain their share of class award. Instead, the Administrator will simply distribute each *pro rata* share of the Settlement Fund to the last known address of each Settlement Class Member, which was obtained from Pret's books and records. This proposed method of distribution is clearly effective and weighs in favor of preliminary approval.

### c. The proposed attorney fee award and timing of payment support approval.

The final relevant sub-factor[6] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

---

[6] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* Ex. 3 (Keogh Decl.) at ¶ 10, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S.

Here, the Agreement does not guarantee any set fee, nor does it provide that Pret has agreed to any set fee amount. Instead, Class Counsel has filed a fee petition requesting the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount courts within the Seventh Circuit routinely award. *See, e.g., Lopez-McNear*, No.19-cv-2390, ECF No. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, ECF No. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.) (36% of the fund net admin costs); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million); *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

Regarding timing, Class Counsel has filed their application on the date Notice was sent, which was immediately posted on the Settlement Website allowing Class Members to review or object. Further the Notice mailed to each class member advised the class of the exact amount of fees sough both as a percentage and dollar amount. *See* Ex. 2 at Ex. A, p.1 ("Plaintiff will petition for a service award of $5,000 for Plaintiff Quarles's work in representing the Class and Class

---

Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

Counsel's fees up to thirty six percent of the settlement fund after notice costs are deducted, which equals $240,282.00, plus reasonable expenses.")

Similarly, Plaintiff has petitioned for a $5,000 service award for her role in this litigation. Plaintiff sacrificed her time to prosecute this case on behalf of the 797 individuals who used Pret's timekeeping system. *See* Ex. 3 (Keogh Decl.), ¶ 17. Plaintiff assisted with Class Counsel's pre-suit investigation into the case, analyzed and verified the facts set forth in the Complaint prior to filing, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the Settlement. *Id.*

Moreover, the $5,000 Service Award sought here is comparable to or less than others approved by Illinois state and federal courts[7] in similar BIPA disputes. *See, e.g., Dixon*, No. 1:17-cv- 08033, ECF No. 103 (approving $10,000 service award in BIPA settlement); *Prelipceanu*, 18-CH-15883 (same); *Jones*, 1:19-cv-06736, ECF No. 53 (approving $7,500 service award in BIPA settlement); *Marshall*, 17-CH-14262 (approving $5,000 service award in BIPA class action); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, ECF No. 243 ¶ 20 (N.D. Ill. Feb. 27, 2013). The requested service award of $5,000 for Plaintiff is reasonable and should be approved.

Thus, the fees and expenses sought are fair, reasonable and support approval.

**IV.    CONCLUSION**

This Settlement provides substantial benefits for all Settlement Class Members without the need to submit a claim, it was negotiated at arm's length by an experienced mediator after

---

[7] S*ee also* DKT 47 p. 19 collecting cases.

sufficient discovery and litigation and there are no objections to any portion of the Settlement. Thus, it easily falls within the range of possible approval.

For all of the foregoing reasons, Plaintiff respectfully requests the Court (1) grant the Settlement final approval; (2) grant Class Counsel's request for an award of attorneys' fees equal to $240,282, which represents thirty six percent of the Settlement after administration costs are deducted, plus $9,177 in out-of-pocket expenses they incurred litigating the case for the class and (3) grant Plaintiff a class representative service award in the amount of $5,000. The draft order for Final Approval attached to the Settlement Agreement is attached hereto as *Exhibit 4.*

Dated: April 18, 2022                           Respectfully submitted,

**KAYLA QUARLES, individually and on behalf of all others similarly situated,**

By:  /s/ Keith J. Keogh
     Keith J. Keogh
     Gregg M. Barbakoff
     KEOGH LAW, LTD.
     55 W. Monroe St., Suite 3390
     Chicago, Illinois 60603
     Tel.: (312) 726-1092
     Fax: (312) 726-1093
     keith@keoghlaw.com
     gbarbakoff@keoghlaw.com

*Attorney for Plaintiff and the Proposed Settlement Class*

## **<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that, on April 18, 2022, I caused a copy of the foregoing document, including all attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.


                             /s/ Gregg M. Barbakoff